UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DONNA S. BOGGS, | ) | Case No.  5:08 CV 2027 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Donna S. Boggs filed this appeal seeking judicial reversal under 42 U.S.C. §405(g) and §1383(c)(3) from the administrative denial of disability insurance benefits and  supplemental security income.  At issue is the ALJ's decision dated October 22, 2007, and inferentially the prior April 30, 2004 adjudication from an ALJ due to its *res judicata* effect. (Tr.15, 47A-56, 156, 167, 198); See *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997). The October 22, 2007 decision stands as the final decision of the Commissioner.  See 20 C.F.R.§404.1481; §416.981.  The parties consented to the jurisdiction of the Magistrate Judge for all further proceedings including entry of judgment in accordance with 28 U.S.C. §636(c) and Rule 73 of the Federal Rules of Civil Procedure.

*Prior Decision:*

On November 16, 2000, Boggs applied for disability insurance benefits and supplemental security income. (Tr. 56). An ALJ found that Boggs had the severe impairments of lupus, fibromyalgia, chronic obstructive lung disease, depression and "smoke and marijuana abuse."(Tr.

5:08 CV 2027                                    2

55). The ALJ in that matter resolved those applications unfavorably and found on April 30, 2004, that Boggs was not disabled because she could perform light exertion reduced by nonexertional restriction to routine, low stress work with low production quotas, minimal interaction with the public and with environmental restrictions.  (Tr. 55).  A vocational expert had testified that based on this residual functional capacity, Boggs could perform her past relevant work of a molding machine operator and housekeeper-cleaner (Tr. 54). The vocational expert also identified other jobs as cafeteria attendant and apparel stock checker which were light and unskilled (*Id.*). No appeal was taken from the April 30, 2004 decision, and in the current decision, the ALJ declined to reopen the prior denials. (Tr. 15); See 20 C.F. R. §404.987; §416.1487.

*Current Decision:*

Following the prior denial of benefits, Boggs reapplied for disability insurance benefits and supplemental income alleging onset of disability on May 24, 2004, due to lupus, fibromyalgia, emphysema, "chronic lung disorder," asthma, obesity, and major depression. (Tr. 67, 72). A hearing before an ALJ was held on this second set of applications on May 10, 2007. (Tr. 253-306). At this hearing both a medical advisor and a vocational expert testified.  The ALJ found that Boggs presented severe impairments of osteoarthritis of the hand, arms and knees, chronic obstructive pulmonary disease, fibromyalgia (chronic pain syndrom), depressive disorder and obesity (Tr. 18). [1]  The ALJ also found that  there had been deterioration in Boggs's condition, so that her residual

---

[1]  The ALJ did not find that systemic erythematosus lupus was a severe impairment. (Tr. 18). The ALJ relied on the report from Dr. Wojno, a treating rheumatologist, whose examinations found no evidence to support this diagnosis, or rheumatoid arthritis or any other systemic connective tissue disease (Tr. 19, 130).  Bogg's primary care physician, Dr. Eley, had also stated that Boggs had been told by a rheumatologist that she did not have lupus. (Tr. 19, 223). Boggs does not challenge this finding.

5:08 CV 2027                                                    3

functional capacity had diminished to less than the full physical capability for the full performance of light work (Tr. 22). The ALJ found that Boggs could perform light lifting and carrying, but that she cannot walk for more than 3 hours, and is further restricted to only occasional bending, crouching, kneeling or crawling, plus restriction to simple, routine, repetitive, low-stress tasks with superficial interaction with the public, no high or strict production quotas, and environmental restrictions (Tr. 22). Based on this greater degree of restriction, the vocational expert testified that Boggs could not perform any of her past relevant work, but identified other jobs as mail clerk (not for the U.S. Postal Service), addresser, document preparer, and order clerk for food and beverage (Tr. 32).

*Boggs' Contentions:*

Boggs challenges this conclusion contending: first, that the ALJ did not have valid bases for discounting the opinions from Dr. Wojno, Dr. Eley, and psychologist Dr. Quinn. and second, that the ALJ did not have a valid basis for discrediting Boggs.

Boggs claims that she is disabled primarily by fibromyalgia and pain and that she cannot sustain a 40 hour workweek for psychological reasons. Boggs was 46 years of age at the time of the second administrative decision and had a vocational/GED education. Her past relevant work consisted of laborer, press operator, inventory clerk and data entry. (Tr. 73).

*Standard of Review:*

5:08 CV 2027                                        4

The issues before this court must be resolved under the standard whether there is substantial evidence in the record to support the Commissioner's decision. Substantial evidence is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Casey v. Secretary of Health & Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Wyatt v. Secretary*, 974 F.2d 680, 683 (6th Cir. 1992); *Born v. Secretary*, 923 F.2d 1168, 1173 (6th Cir. 1990); and see *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (court may "not inquire whether the record could support a decision the other way").


*Sequential Evaluation and Meeting or Equaling the Listing of Impairments:*

The Commissioner follows a 5-step review process known as the sequential evaluation. This evaluation begins with the question whether the claimant is engaged in substantial gainful activity and then at the second step whether there is a medically severe impairment. See §404.1520(a)(4)(I) and (ii) and §416.920(a)(4)(I) & (ii). At the third step of a disability evaluation sequence the issue is whether the claimant has an impairment which meets or equals a listed impairment from the Listing of Impairments of Appendix 1. See 20 C.F.R. §404.1520(a)(iii) and (d); §416.920(a)(iii) and (d). If an impairment exists which meets the description from the listing or is its equivalent, the claimant is deemed disabled at that point without consideration of age, education or prior work experience. See *Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987); *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (Once a claimant has met this burden that ". . . his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without determination whether he can perform his prior work or other work.")."At the fourth step of the sequential

5:08 CV 2027                                              5

approach described in 20 C.F.R. §404.1520, it is the claimant's burden to show that [he] is unable to perform her previous type of work." *Dykes ex rel. Brymer v. Barnhart*, 112 Fed. Appx. 463, 467, 2004 WL 2297874, at *3 (6th Cir. 2004)); *Studaway v. Sect'y of Health and Human Services*, 815 F.2d 1074, 1076 (6th Cir. 1987). Once the administrative decision-maker determines that an individual cannot perform past relevant work, then the burden of going forward shifts to the Commissioner at the fifth step to demonstrate the existence of types of employment compatible with the individual's disability. *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Cole v. Secretary*, 820 F.2d 768, 771 (6th Cir. 1987); *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).

*Evaluation of opinions from the primary care physician and others:*

The ALJ rejected the February 9, 2005 opinion from treating physician, Dr. Eley, that Boggs was restricted to "very limited ability to work due to medication use, chronic axial skeletal pain paraspinous/trapezius muscle soreness- very limited, if at all, ability to perform work of any kind due to above - also psychological component related to adverse effects of cortisone use." (Tr.  25, 184-185). Boggs points out that Dr. Eley had treated Boggs since 2001.

Boggs does not contend that the ALJ's reading of the record is inaccurate, but attempts to construct a tripod of Dr. Eley's, Dr. Wojno's and Dr. Quinn's findings and opinions to support the conclusion that she cannot sustain work activity. Dr. Wojno, though, offered no opinion. He diagnosed fibromyalgia and had seen Boggs sporadically on referral from Dr. Eley.  (Tr. 130-32). Dr. Quinn, on the other hand, was not a treating physician. He performed a consultative

5:08 CV 2027                                    6

psychological examination and concluded Boggs was markedly limited in her ability to sustain a

workweek. (Tr. 25-26, 139-43).    A one-time consultative psychological examination made in

relation to a Social Security disability claim is "entitled to no special degree of deference." *Barker*

*v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).


Boggs certainly can construct a case for disability on this medical tripod, but this does not

negate the ALJ's contrary conclusion. Quoting again from *Barker*:

> This court's review of the ALJ's findings is limited to an inquiry into whether they
> were supported by substantial evidence. 42 U.S.C. § 405(g); *Cotton v. Sullivan*, 2
> F.3d 692, 695 (6th Cir.1993). "If the answer to that question is 'Yes' [the court] may
> not even inquire whether the record could support a decision the other way." *Smith
> v. Secretary of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir.1989).

> *Barker v. Shalala,* 40 F.3d at 794.


The only opinion from a *treating* physician in issue is Dr. Eley's February 9, 2005 opinion

that Boggs has "very limited ability to work, if at all." (Tr. 185). Reversal is required when in

rejecting a treating physician's opinion the ALJ failed to give "good reasons" for not giving weight

to that opinion. See *Wilson v. Commissioner of Soc. Sec.*  378 F.3d 541, 544 (6th Cir. 2004).  Boggs

first argues that the ALJ based his rejection of Dr. Eley's opinion finding that Dr. Eley contradicted

himself in his answers to the question about prescribed therapy and the patient's response.  Dr. Eley

had responded that corti-steroid therapy had provided fair control, antidepressants had provided fair

to good control and opiates for arthritis and fibromyalgia had provided fair to good control. (Tr. 25,

185).  The ALJ did not err. The ALJ is not bound by a conclusory opinion which is unsupported by

detailed objective criteria, or when there is substantial medical evidence to the contrary.  *Cutlip v.*

5:08 CV 2027                                         7

*Secretary*, 25 F.3d 284, 286 (6th Cir. 1994); *Cohen v. Secretary*, 964 F.2d 524, 528 (6th Cir. 1992); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984). Under the regulatory scheme the treating physician's opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques." This includes reporting : (1) treatment provided; (2) extent of examination; and (3) testing (20 C.F.R. §404.1527(d)(2)(ii) and §416.927(d)(2)(ii)). The treatment and the tests of Boggs' response to it, according to Dr. Eley, was successful. Thus the detailed objective criteria did not support the opinion that Boggs was disabled.

Boggs counters that what Dr. Eley meant was that Boggs was doing well given the current severity of her condition when he reported fair to good and good responses to therapy. Essentially she is arguing that Dr. Eley's answers should interpreted differently. Dr. Eley's responses were clear. (See Tr. 185). He did not say "good considering" or give any indication that would diminish his view that treatment was successful.

Next, the ALJ went on to point out Boggs' lack of compliance with regular exercise and physical therapy, and refusal of treatment for her cold sores because she claimed that these were manifestations of lupus, (Tr. 25). This aspect of the ALJ's determination is based on the principle, implemented through 20 C.F.R. §404.1530 and §416.930, that "In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work." A remediable condition does not qualify for disability insurance benefits. See *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967), *cert. denied*, 389 U.S. 993 (1967); *Awad v. Secretary*, 734 F.2d 288, 289-90 (6th Cir. 1984); *Hardaway v. Secretary*, 823 F.2d 922, 925 (6th Cir. 1987). It stands to

5:08 CV 2027                                    8

reason that Dr. Eley prescribed physical therapy to alleviate Boggs' fibromyalgic symptoms, but her

unexcused refusal to participate kept her from improving. Boggs does not now attempt to explain

away this finding or diminish its significance.


Finally, the ALJ critiqued Dr. Eley's opinion for its lack of quantifying "very limited" work

capability. (Tr. 25).  The ALJ does not err in assigning less weight in the absence of quantified

limitations. See *Alexander v. Astrue*, 2008 WL 4445070, at *5 (N.D. Ga. 2008); *Hulbert v. Comm'r

of Social Sec.*,  2009 WL 2823739, at * 15  (N.D.N.Y. 2009).


*Dr. Eley's opinion was not Uncontradicted:*

Boggs next argues that the uncontradicted opinion from a treating physician is entitled to

complete deference. Medical advisor, Dr. Schweid testified at the administrative hearing that he

reviewed Dr. Eley's opinion. (Tr. 265-66).  After detailed review of the medical record, Dr. Schweid

opined that Boggs' impairments did indeed limit her work capabilities, but nonetheless allowing for

pain, he believed Boggs was capable of light exertion, occasional climbing, bending, crouching,

kneeling, crawling plus environmental restrictions. (TR 276-77). Thus, the unquantified opinion of

the treating physician was either contradicted or supplemented (depending how one looks at it) by

the opinion from the medical advisor. In either regard, the ALJ gave good reasons to give more

weight to the quantified opinion from the medical advisor on Boggs' degree of physical limitation.

5:08 CV 2027                                    9

*Fibromyalgia and Pain Credibility:*

Boggs attempts to disqualify Dr. Schweid for not accepting that that the record documented 11 of the 18 trigger points for a fibromyalgia diagnosis. (Tr. 270-71). Dr. Schweid had been initially unaware of Dr. Wojno's medical notes documenting the basis for a fibromyalgia diagnosis. Boggs referred him to Dr. Wojno's report, but after reviewing it Dr. Schweid concluded, "So for the time being I would classify for fibromyalgia simply as a chronic pain syndrome." (Tr. 272). When pressed on this issue, Dr. Schweid stated that the diagnosis requires 11 trigger points distributed in 3 of 4 quadrants and "here we can't quite tell." (Tr. 274).

Fibromyalgia can be disabling. *Kelley v. Callahan*, 134 F.3d 583, 587 (8th Cir. 1998). However, diagnosis of this disease alone does not establish disability. See *Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 806 (6th Cir. Jan. 15, 2008)(citing *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)). "Some people may have a severe case of fibromyalgia as to be totally disabled from working. . . but most do not and the question is whether [claimant] is one of the minority.(citations omitted)" *Id*. It is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of the muscle, ligaments and other tissue." *Beneke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004). It is associated with "chronic diffuse widespread aching and stiffness of muscles and soft tissues." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n. 3 (6th Cir. 2007)(quoting *Stedman's Medical Dictionary for the Health Professions and Nursing* at 541 (5th ed. 2005)). There are no laboratory tests for the presence or severity of fibromyalgia." *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 916 (7th Cir. 2003)(quoting *Sarchet v. Chater*, 78 F.3d at 306 (7th Cir. 1996)). It is diagnosed subjectively by "focal tenderpoints." See *Preston v. Secretary of*

*Health and Human Services*, 854 F.2d 815 (6th Cir. 1988) "[T]he only symptom that discriminates between [fibromyalgia] and other diseases of a rheumatic character - multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed with fibromyalgia. . ." *Sarchet v. Chater*, 78 F.3d at 306; and see *Green-Younger v. Barnhart*, 1335 F.3d 99, 107 (2nd Cir. 2003). "All these symptoms are easy to fake" *Sarchet*, 78 F.3d at 306-07; *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 916 (7th Cir. 2003); and see *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 421-22 (6th Cir. 2008)(video evidence confirmed faking fibromyalgia). This subjective nature of fibromyalgic pain poses a problem which requires careful analysis. See *Green-Younger*, 335 F.3d at 109.

Boggs asks the Court to revisit this issue and make its own determination from Dr. Wojno's medical notes. (See Tr. 129). However, Dr. Wojno issued no clear statement regarding the number of focal tenderpoints. The answer to this question of whether Boggs exhibited 11 or more of the required focal tenderpoints is not obvious and requires interpretation of Dr. Wojno's medical charting. The ALJ accepted fibromyalgia as one of Boggs' severe impairments, but this does not moot her argument. Boggs claims that Dr. Schweid, in effect, diminished her condition by relegating it to chronic pain syndrome, and it was this doctor's residual functional capacity on which the ALJ relied. (See Tr. 28-29). Resolution leads directly to Boggs' second contention regarding the ALJ's rejection of her subjective complaints of pain.

5:08 CV 2027                                            11

*ALJ had Substantial Evidence to not fully credit Alleged Disabling Pain:*

This case presents a situation where the treating physician's opinion of disability is based on acceptance of largely subjective complaints of pain and evaluation of the alleged pain goes hand-in-hand with weighing the treating physician's opinion. See *Vance v. Comm'r of Social Sec.,* 260 Fed.Appx. at 805 (The ALJ found that activities of daily living were inconsistent with the opinion of disability and  level of pain and fatigue alleged.); *Hall v. Commissioner of Social Sec*., 148 Fed.Appx. 456, 462, 2005 WL 2139890, at * 6 (6th Cir. 2005) ("Dr. Caudill was most familiar with the pain Hall experienced because of his back.").  In effect the matter distills to an issue of credibility.  So there is convergence of the proper weight to give the treating physician's opinion and assessment of Parker's credibility in relation to the first reason stated by the ALJ.

Credibility determinations track pain analysis.  See *Felisky v. Bowen*, 36 F.3d 1027, 1038-39 (6th Cir. 1997); *McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995), *cert. denied*, 518 U.S. 1022 (1996); *Walters v. Comm. of Soc. Sec.*, 127 F.3d 525, 531-32 (6th Cir. 1997); and see *Saddler v. Commissioner of Soc. Sec.*, 173 F.3d 429, 1999 WL 137621 (Table 6th Cir. March 4, 1999); 20 C.F.R. §404.1529(c)(3); §416.929(c)(3). The role of the court is not to examine the credibility of claimant's testimony or resolve conflicting evidence, but rather to determine whether substantial evidence supports the Commissioner's determination of disability within the meaning of the Social Security Act.  See *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001); *Rogers*, 486 F.3d at 247. The ALJ's discussion of this issue must contain clearly stated reasons. *Felisky v. Bowen*, 35 F.3d at 1036, citing *Auer v. Secretary of Health & Human Servs*., 830 F.2d 594, 595 (6th Cir. 1987).  The Commissioner has elaborated on this point requiring that the administrative decisions, "must contain specific reasons

5:08 CV 2027                              12

for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewer the weight the adjudicator gave to the individual's statements and the reasons for that weight." Social Security Ruling (SSR) SSR 96-7p, 1996 WL 374186 *1-2; *Rogers,* 486 F.3d at 248.

The format set forth in SSR 96-7p outlines the administrative evaluation process beginning with traditional two-prong *Duncan* pain analysis plus the additional regulatory considerations under 20 C.F.R. §404.1529(c)(3) and §416.929(c)(3). See *Duncan v. Secretary of Health & Human Services*, 801 F.2d 847, 853 (6th Cir. 1986); *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). Under two-prong pain analysis, there first must be a determination whether there exists an underlying medically determinable physical or mental impairment followed by the question whether the impairment would be reasonably expected to produce the individual's pain or other symptoms. SSR 96-7p, 1996 WL 374186 at *2. The ALJ accepted that Boggs had underlying medical determinable impairment of fibromyalgia/ chronic pain syndrome which would account for pain and referred to her testimony from the administrative hearing (Tr. 18).

The second question then is the reasonableness of the alleged debilitating pain. The regulatory considerations that follow require the ALJ to investigate subjective complaints of pain or other symptoms based on:

1.      The claimant's daily activities;

2.      The location, duration, frequency, and intensity of pain;

3.      Precipitating and aggravating factors;

5:08 CV 2027                                13

     4.      The type, dosage, effectiveness, and side-effects of medication to alleviate pain or other symptoms;

     5.      Treatment, other than medication claimant has received for relief of pain; and

     6.      Any other measures used to relieve pain (e.g. lying down or changing position).

     7.      Other factors concerning functional limitations and restrictions due to pain or other symptoms.

See SSR 96-7p, 1996 WL 374186 at *2; 20 C.F.R. §404.1529(c)(3)(I-vii); §416.929(c)(3)(I-vii).


Boggs criticizes the ALJ's findings for vagueness when the ALJ stated the "allegations of the intensity, persistence and functionally limiting effects of the symptoms produced by the impairments . . . are sufficiently credible, and sufficiently consistent with the objective medical and other evidence in the case record, to show that the symptoms produced by these impairments, severe and not severe, result in the residual functional capacity stated . . ." (Tr. 22). However, the ALJ's determination was not vague. Rather, it was not tightly organized along the lines of the credibility regulations and SSR 96-7p.  What matters, though, is whether the ALJ conducts the analysis required by this ruling. See  *McClanahan v. Comm'r of Soc. Sec*., 474 F.3d 830, 835 (6th Cir. 2006).


The ALJ noted Boggs' testimony (Tr. 18). Boggs testified that she was "limited" in walking and lifting and that fibromyalgia caused muscle spasms which were "help[ed] a little bit"  by medication (Tr. 259). She added that she could not use steps,  walk more than one-half block, or stand more than 20 to 30 minutes without left knee pain, and that she has knee pain when she rises from sitting (Tr. 260-61). As for fibromyalgia specifically, Boggs responded that Dr. Wojno treated

5:08 CV 2027                                        14

her for fibromyalgia, arthritis and rheumatoid arthritis, that arthritis was "just sort of throughout" her body, and that  there were "not really" other problems with arthritis aside from the knee. (Tr. 261).

The ALJ also recounted that Boggs had reported in an August 5, 2004 function report that on "normal" days she can do light housekeeping, cook dinner,  watch television, wash dishes, fold clothes, grocery shop, drive, but could not kneel or squat (Tr. 23, 81-87). He also included consideration of other function reports where Boggs had stated that she was allergic to sun, had difficulty reaching and bending to dress herself, took 2 hours to cook, but could perform housework which did not require bending or reaching (Tr. 24, 79-80, 99, 102-06, 110-11). At times, though, she admitted to being functional.

The ALJ also included consideration of the report from her treating physician that her responses to therapy had been good or fair to good. (Tr. 25). "[T]here  is nothing patently erroneous in the ALJs decision to rely on [his] own reasonable assessment of the record over the claimant's personal testimony" in assessing pain. See *White v. Comm'r of Soc. Sec*., 572 F.3d 272, 287 (6th Cir. 2009). As SSR 96-7p provides, an ALJ "may rely on '[s]tatements and reports form the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history' to assess credibility." *Id.; Rogers,* 486 F.3d at 247 (ALJ must consider "any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record.").

The ALJ also referred extensively to Dr. Schweid's testimony. (Tr. 18, 28-29). The ALJ further reviewed the results of Dr. Anaya's consultative physical examination with its normal

5:08 CV 2027                                      15

findings on muscle strength and ranges of motion. (Tr. 26-27,174-82). The ALJ agreed that Boggs could sit and handle objects, but credited Boggs' alleged pain in rejecting Dr. Anaya's opinion that Boggs' could perform up to heavy exertion (Tr. 27, 176).

As the ALJ found, the limiting effects which Boggs attributed to her symptoms were sufficiently consistent with the case record to credit them to the extent that the pain reduced the range of light work that Boggs could perform. (Tr. 22). "Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect." *Rogers*, 486 F.3d at 248.  The ALJ supported his credibility determination with evidence to establish that it was "consistent with the entire record and the weight of the relevant evidence."  See *id*.

The ALJ's considerations were sufficient for the determination that Boggs' pain limits her to a partial range of light exertion. Commensurate with this, the ALJ provided "good reasons" to reject the opinion from Dr. Eley that Boggs had  very limited work ability and the determination, read in its entirety, provided adequate explanation of the reasons the ALJ found the complaints of subjective pain were exaggerated beyond that extent Boggs would be limited to performing a partial range of light exertion.

### *CONCLUSION*

The  issues  before  this  court  must  be  resolved  under  the  standard  of  whether  the determination is supported by substantial evidence of record.  Under 42 U.S.C. §405(g), the ALJ's

5:08 CV 2027                                        16

findings are conclusive as long as they are supported by substantial evidence, and this court's review "is limited to determining whether there is substantial evidence in the record to support the findings" *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001)(quoting *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 851 (6th Cir. 1986)).  Boggs' arguments do not demonstrate error in the final administrative decision nor that the determination is not supported by substantial evidence.  Based on the arguments presented, the record in this matter and the applicable law, the Commissioner's denial of disability insurance benefits and supplemental security income is affirmed with judgment entered for the Commissioner.



                         s/James S. Gallas
                    United States Magistrate Judge